| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS<br>HOUSTON DIVISION |
|---|---|

| | | |
|---|---|---|
| ERICA GIL, Individually and On Behalf of All Others Similarly Situated, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | No. 4:26-cv-09765 |
| v. | § | |
| | § | |
| HOUSTON INDEPENDENT SCHOOL DISTRICT, | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFFS' ORIGINAL COLLECTIVE ACTION COMPLAINT

Plaintiff Erica Gil ("Gil"), individually and on behalf of all others similarly situated, and Opt-In Plaintiffs Cristian Duron ("Duron"), Gregory L. Sloan Jr. ("Sloan"), and Ana Contreras ("Contreras") (together with Gil, "Plaintiffs") bring this collective action under 29 U.S.C. § 216(b) against Defendant Houston Independent School District ("HISD") to recover unpaid overtime wages, liquidated damages, and attorney's fees and costs under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 ("FLSA").

### I. Nature of Suit

1. Plaintiffs' claims arise under the FLSA. They concern a single, common HISD policy: HISD requires each police K-9 handler to keep an

HISD-owned police dog at the handler's home and to feed, exercise, groom, train, and otherwise care for it every day. On scheduled workdays, HISD credited only one hour of each paid shift to dog care, even though handlers regularly spent more than one hour per day caring for the dog outside their scheduled shifts, and HISD paid nothing for that additional time. HISD also paid nothing for the care handlers performed on weekends, holidays, vacation days, and other days off.

2. The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers …." 29 U.S.C. § 202(a).

3. To achieve its humanitarian goals, the FLSA establishes minimum wage, overtime pay, and recordkeeping requirements for covered employers. 29 U.S.C. §§ 206(a), 207(a), 211(c).

4. HISD violated the FLSA by employing Plaintiffs and other similarly situated K-9 handlers "for a workweek longer than forty hours" without compensating them for their employment in excess of forty hours "at a rate not less than one and one-half times the regular rate at which [they were] employed." 29 U.S.C. § 207(a)(1). HISD also excluded the K-9 handler stipend it paid from the regular rate it used to compute the overtime it did pay. 29 U.S.C. § 207(e).

5. HISD willfully violated the FLSA because it knew or showed reckless disregard for whether its pay practices were unlawful. HISD's own Canine Policy Manual has acknowledged since at least November 2020 that handlers must be compensated for dog care "as provided in the Fair Labor Standards Act," yet HISD paid nothing for weekend and holiday care until October 31, 2026.

6. Plaintiffs bring this action under 29 U.S.C. § 216(b) individually and on behalf of all similarly situated current and former HISD K-9 handlers to recover unpaid overtime wages, liquidated damages, and attorney's fees and costs.

## II. Jurisdiction & Venue

7. This Court has federal-question jurisdiction because this action arises under the FLSA. 28 U.S.C. § 1331; 29 U.S.C. § 216(b).

8. Venue is proper in the Houston Division of the Southern District of Texas because HISD resides in Harris County, Texas, which lies within the Houston Division, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred there. 28 U.S.C. §§ 124(b)(2), 1391(b)(1)-(2).

## III. Parties

9. Gil is an individual who resides in Harris County, Texas. HISD has employed Gil as a commissioned peace officer in the Houston ISD Police

Department since November 6, 2017, and as a K-9 handler at various times since May 2021.

10. Opt-In Plaintiff Cristian Duron is an individual who resides in Harris County, Texas. HISD has employed Duron as a commissioned peace officer and, since at least December of 2018, as a K-9 handler assigned to HISD police canine Bjorn.

11. Opt-In Plaintiff Gregory L. Sloan Jr. is an individual who resides in Harris County, Texas. HISD has employed Sloan as a commissioned peace officer and, since approximately April of 2024, as a K-9 handler assigned to HISD police canine Schultz.

12. Opt-In Plaintiff Ana Contreras is an individual who resides in Harris County, Texas. HISD employed Contreras as a commissioned peace officer from approximately August 2020 until approximately February 2026, including as a K-9 handler assigned to an HISD explosives detection canine from approximately January 2024 until her separation.

13. HISD is an independent school district organized under the laws of the State of Texas. HISD may be served with process by serving the president of its board of trustees, Ric Campos, or its superintendent, F. Mike Miles, at 4400 West 18th Street, Houston, Texas 77092. *See* Fed. R. Civ. P. 4(j)(2); Tex. Civ. Prac. & Rem. Code § 17.024(c).

14. HISD's principal administrative offices are located at 4400 West 18th Street, Houston, Texas 77092.

15. An allegation that HISD committed any act or omission should be construed to mean that HISD's officers, directors, vice-principals, agents, servants or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of HISD or was done in the routine and normal course and scope of employment of HISD's officers, directors, vice-principals, agents, servants or employees.

## IV. Facts

16. HISD is a political subdivision of the State of Texas and a "public agency" within the meaning of the FLSA. 29 U.S.C. § 203(x). HISD is an "employer" of Plaintiffs and the members of the Overtime Collective (defined below), and Plaintiffs are its "employees." 29 U.S.C. § 203(d), (e)(2)(C). The FLSA's minimum wage and overtime requirements apply to political subdivisions such as HISD. *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985).

17. HISD is not an arm of the State of Texas and has no Eleventh Amendment immunity from this suit. The Fifth Circuit has held that Texas independent school districts are not arms of the State. *Springboards* to *Educ., Inc.*

*v. McAllen Indep. Sch. Dist.*, 62 F.4th 174 (5th Cir. 2023); *Lopez v. Houston Indep. Sch. Dist.*, 817 F.2d 351, 354 (5th Cir. 1987).

18. The Texas Education Agency's appointment of a Board of Managers and superintendent for HISD in 2023 did not change HISD's legal status. The appointment is temporary, and the Board of Managers exercises the powers of HISD's board of trustees. HISD remains an independent school district that sues and is sued in its own name, levies and collects its own local ad valorem taxes, holds and uses its own property, and pays its own obligations, including any judgment in this action, from district funds rather than from the Texas state treasury.

19. HISD operates the Houston ISD Police Department, a school district police department commissioned under Texas Education Code § 37.081. The Department maintains a K-9 unit. HISD owns the police canines in the unit and assigns each one to a commissioned peace officer who serves as its handler.

20. HISD first assigned Gil to K-9 Boni, a narcotics detection dog, on or about May 10, 2021.

21. In January 2024, HISD sent Gil, Duron, and Contreras to North Carolina to certify as explosives detection handlers. Gil returned with K-9 Lodi on January 20, 2024 and cared for both Lodi and Boni at her home until

February 8, 2024, when HISD retrieved both dogs while Gil was on light duty. On or about October 23, 2024, HISD assigned K-9 Thor to Gil.

22. In approximately February 2026, HISD reassigned K-9 Boni to Gil.

23. Gil remains assigned to K-9 Boni.

24. HISD does not kennel its police canines at a district facility. HISD requires each handler to house the assigned canine at the handler's residence. Before selecting Gil as a handler, an HISD K-9 sergeant inspected her home on August 17, 2021. HISD's K-9 sergeant has acknowledged in writing that, "[b]ecause the canine is not housed at a boarding kennel, the handlers must care for the canine everyday regardless if they are on duty or off."

25. HISD's Canine Policy Manual dated November 9, 2020 (the "Canine Manual") provides that "[t]he canine handler shall be compensated for time spent in the care, feeding, grooming, and other canines' needs, as provided in the Fair Labor Standards Act." The Canine Manual further provides that "Canine Handlers duty hours will be 7 hours, with 1 hour for caring for departmental canine," and that "[a]ll canine handlers are given a stipend of $100 a month for upkeep and maintenance of a department canine." On February 2, 2023, HISD's K-9 sergeant circulated the Canine Manual to the K-9 unit and directed handlers to follow these provisions.

26. The care HISD required included feeding and watering the dog; bathing, brushing, and grooming it; exercising it; cleaning its kennel, the handler's yard, and the K-9 patrol vehicle; administering medication; transporting the dog to veterinary appointments; and training the dog at home to maintain its detection and obedience skills. HISD's K-9 sergeant has acknowledged in writing that each of these activities is compensable under the FLSA.

27. These tasks were integral and indispensable to Plaintiffs' principal activities as K-9 handlers. HISD cannot deploy a detection dog that is not fed, exercised, healthy, and trained, and HISD requires the care for its own benefit: to keep its canines healthy, certified, and ready for deployment. HISD also requires each K-9 team to train at least sixteen hours per month.

28. Gil's responsibility for her assigned police canine did not begin and end with her regularly scheduled police shift.

29. On scheduled duty days, HISD's practice was to treat one hour of the handler's 8:00 a.m. to 4:00 p.m. shift as the "K-9 hour" for dog care. Handlers regularly spent more than one hour per workday caring for the dog, including care before and after their shifts, and HISD did not record or pay for that additional time. HISD also paid nothing for the care handlers had to perform on Saturdays, Sundays, holidays, vacation days, and other days on

which they were not scheduled to work, even though the dog required the same daily care on those days.

30. Each Plaintiff spent approximately ten to fifteen hours per week caring for the assigned canine while it was in that Plaintiff's custody, including more than one hour on each workday and more than one hour on each day off. That care included feeding and watering the dog; bathing, brushing, and grooming it; trimming its nails and providing dental care; exercising it; cleaning its kennel and removing waste from the handler's yard; cleaning dog hair, waste, and other debris from the K-9 patrol vehicle; administering medication and flea, tick, and heartworm prevention; monitoring the dog's health and condition; transporting the dog to and from veterinary appointments; and training the dog at home to maintain its detection, obedience, and control skills. HISD credited no more than one hour of each scheduled workday to this care, and it credited nothing for care on weekends, holidays, vacation days, and other days off. As a result, each Plaintiff performed approximately five to ten hours of uncompensated care each week.

31. Gil was responsible for the care and maintenance of her assigned police canine on a daily basis while the canine remained in her custody, regardless of whether Gil was scheduled to work her regular police shift that day.

32. HISD knew that its police canines lived at the handlers' homes. HISD placed the dogs there, inspected handlers' homes before assigning dogs, retrieved and delivered dogs at handlers' residences, and approved handlers' requests to take the dogs to veterinary appointments.

33. HISD also knew that handlers performed care for its dogs while off duty. Its Canine Manual required that care, and HISD supervisors approved K-9 care compensatory time for Gil in 2022 and again in February 2024 for care she performed while not on duty.

34. On October 30, 2026, HISD's K-9 sergeant reported to HISD's Chief of Police in writing that, "[s]ince the stipend was removed, our canine handlers have not been compensated for the care of their canines, specifically on the weekends and holidays"; that "[o]n weekends and holidays, the officers don't have a choice not to care for the canines"; and that experienced canine officers and sergeants had left the department in part because of these concerns. The Chief approved one hour of overtime per handler for each weekend day beginning October 31, 2026. HISD has not paid for any care performed on weekends, holidays, or other non-workdays before that date, and it still does not pay for care performed outside scheduled shifts on workdays.

35. During the relevant period, HISD paid its K-9 handlers a "Police Dog Handlers" stipend of $69.23 per biweekly pay period. HISD stopped paying the stipend to its K-9 handlers in or about July 2024. On November 15,

2024, Commander Darren McCall told Gil in writing that "the district did away with all stipends."

36. The stipend did not compensate Plaintiffs for their off-duty care hours. The Canine Manual described it as a payment for "upkeep and maintenance of a department canine"; it was a flat amount that did not vary with the hours of care performed; HISD did not record it as payment for hours worked; and handlers paid out of pocket for many of the supplies their dogs needed.

37. During the three years before the filing of this Complaint and through October 30, 2026, HISD did not record or pay as hours worked any of the care Plaintiffs performed on weekends, holidays, vacation days, and other days off.

38. After HISD discontinued the stipend, Plaintiffs received nothing at all for off-duty care, but they continued to perform that care every day while assigned an HISD canine.

39. In particular, after K-9 Boni was reassigned to Gil in approximately February 2026, Gil resumed responsibility for Boni's daily care and maintenance outside of her regularly scheduled working hours.

40. HISD did not compensate Gil for all compensable off-duty time she spent caring for K-9 Boni following Boni's reassignment to Gil.

41. HISD did not record Plaintiffs' off-duty care time, as 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2 require. Until it created a "K9 Weekend Care" overtime entry effective October 31, 2026, HISD provided no means for handlers to report care performed on weekends, holidays, or other non-workdays, and it still provides no means for handlers to report care performed outside their scheduled shifts on workdays.

42. Plaintiffs were regularly scheduled to work forty hours per week, from 8:00 a.m. to 4:00 p.m., Monday through Friday, with Saturdays and Sundays off. Because their scheduled forty hours already included the daily K-9 hour, each hour of care performed outside the scheduled shift on a workday, and each hour of care performed on a Saturday or Sunday, in a workweek in which a Plaintiff worked the full schedule was an hour worked in excess of forty. As a result, in each workweek in which a Plaintiff worked the full forty-hour schedule while assigned an HISD canine, that Plaintiff worked approximately forty-five to fifty hours, and HISD paid nothing for the hours over forty.

43. HISD computes overtime for its police officers on the basis of a seven-day, forty-hour workweek and pays an overtime premium for hours worked over forty in a workweek. On information and belief, HISD has not established a work period under 29 U.S.C. § 207(k). Alternatively, if HISD established a § 207(k) work period, Plaintiffs' off-duty care time caused them to exceed the applicable maximum hours standard (43 hours in a 7-day work

period, 86 hours in a 14-day work period, or 171 hours in a 28-day work period) in the work periods described above. 29 C.F.R. § 553.230.

44. HISD knew or should have known that Plaintiffs worked more than forty hours in those workweeks. HISD set their forty-hour schedules, knew that its dogs lived at their homes and required daily care, and was told by the handlers and by their sergeant that the weekend and holiday care was going unpaid.

45. HISD did not pay Plaintiffs for the hours they worked in excess of forty per week "at a rate not less than one and one-half times the regular rate at which [they were] employed." 29 U.S.C. § 207(a)(1).

46. HISD paid overtime for some recorded hours, but it paid nothing for the off-duty care hours described above.

47. Plaintiffs were not exempt from the FLSA's overtime requirements. HISD classified them as nonexempt and paid them overtime for other recorded hours.

48. Plaintiffs complained to HISD about the lack of pay for off-duty K-9 care.

49. These complaints placed HISD on actual notice that its handlers were performing uncompensated off-duty care.

50. HISD did not change its practice in response. It took no action until October 30, 2026, nearly two years after the December 2024 meeting, and even then it did not pay for care performed before October 31, 2026.

51. Prior to this Lawsuit, HISD conducted one or more internal investigations which revealed violations similar to the one(s) complained of by Gil.Because HISD willfully violated the FLSA, it is liable to Plaintiffs for FLSA violations that occurred during the three years before each Plaintiff's written consent is filed. 29 U.S.C. §§ 255(a), 256.

52. As a result of the FLSA violations described above, HISD is liable to Plaintiffs for unpaid overtime compensation, liquidated damages, and attorney's fees and costs. 29 U.S.C. § 216(b).

**V. Count One: Failure to Pay Overtime for Off-Duty K-9 Care in Violation of 29 U.S.C. § 207(a)**

53. Plaintiffs adopt by reference all of the facts set forth above. *See* Fed. R. Civ. P. 10(c).

54. During their employment with HISD, Plaintiffs and the members of the Overtime Collective were nonexempt employees.

55. HISD was legally obligated to pay Plaintiffs and the members of the Overtime Collective "at a rate not less than one and one-half times the regular rate at which [they were] employed" for all hours worked in excess of

forty per workweek, including off-duty K-9 care time. 29 U.S.C. § 207(a)(1); *see* 29 C.F.R. §§ 785.11-.13.

56. HISD did not pay Plaintiffs and the members of the Overtime Collective "at a rate not less than one and one-half times the regular rate at which [they were] employed" as required by 29 U.S.C. § 207(a)(1).

57. Instead, HISD paid nothing for the off-duty care time described above. To the extent HISD credited any K-9 care time with compensatory time, it credited that time on an hour-for-hour basis rather than at one and one-half hours for each overtime hour, as 29 U.S.C. § 207(o)(1) requires.

58. As a result, HISD is liable to Plaintiffs and the members of the Overtime Collective for unpaid overtime compensation and an equal amount as liquidated damages. 29 U.S.C. § 216(b).

## VI. Count Two: Failure to Include the K-9 Stipend in the Regular Rate in Violation of 29 U.S.C. § 207(a) and (e)

59. Plaintiffs adopt by reference all of the facts set forth above. *See* Fed. R. Civ. P. 10(c).

60. The regular rate includes "all remuneration for employment paid to, or on behalf of, the employee," except payments the statute specifically excludes. 29 U.S.C. § 207(e). The "Police Dog Handlers" stipend was paid to handlers because of their K-9 assignment and the work it required, was not

discretionary, and does not fall within any statutory exclusion. *See* 29 C.F.R. § 778.108.

61. In workweeks in which HISD paid Plaintiffs both the stipend and overtime, HISD computed the overtime premium using only the base hourly rate and excluded the stipend. HISD therefore underpaid overtime in each such workweek, including each workweek covered by the retroactive stipend payment HISD issued to Gil on July 16, 2025. *See* 29 C.F.R. § 778.209.

62. Alternatively, if the stipend was a reimbursement of expenses excludable from the regular rate under 29 U.S.C. § 207(e)(2), HISD may not credit it toward the overtime compensation owed under Count One. 29 U.S.C. § 207(h)(1).

63. HISD is liable to Plaintiffs and the members of the Overtime Collective for the resulting unpaid overtime compensation and an equal amount as liquidated damages. 29 U.S.C. § 216(b).

## VII. Count Three: Willfulness and Limitations Under 29 U.S.C. § 255(a)

64. Plaintiffs adopt by reference all of the facts set forth above. *See* Fed. R. Civ. P. 10(c).

65. HISD willfully violated the FLSA because it knew or showed a reckless disregard for whether its pay practices were unlawful.

66. HISD knew that K-9 handlers housed assigned police canines at their residences and were responsible for the daily care and maintenance of those canines outside their scheduled shifts.

67. HISD knew or reasonably should have known that required K-9 care could not be limited to Plaintiffs' scheduled working hours because each assigned canine required daily feeding, exercise, grooming, and other care.

68. HISD's own Canine Manual has stated since at least November 9, 2020 that handlers "shall be compensated for time spent in the care, feeding, grooming, and other canines' needs, as provided in the Fair Labor Standards Act." HISD thus knew that off-duty dog care was compensable work under the FLSA before it discontinued the stipend and continued not to pay for weekend and holiday care.

69. Courts have treated off-duty police dog care as compensable work under the FLSA for decades, including in litigation brought by City of Houston police K-9 officers. HISD's own K-9 sergeant cited the City of Houston's agreement to pay its K-9 officers for off-duty care when he reported to HISD's Chief of Police that HISD's handlers were not being paid.

70. Plaintiffs further placed HISD on actual notice of the unlawful pay practice by complaining about uncompensated K-9 care.

71. Plaintiffs complained verbally and in writing, including on the dates alleged above.

72. Despite notice of these complaints, HISD continued to fail to compensate Plaintiffs for off-duty K-9 care for nearly two more years.

73. HISD failed to maintain accurate time and pay records reflecting the off-duty K-9 care performed by Plaintiffs.

74. HISD's acts and omissions demonstrate that it knew or showed reckless disregard for whether its compensation practices complied with the FLSA.

75. Because HISD willfully violated the FLSA, HISD is liable to Plaintiffs and the members of the Overtime Collective for FLSA violations that occurred during the three years before each person's written consent is filed. 29 U.S.C. §§ 255(a), 256.

## VIII. Count Four: Collective-Action Allegations Under 29 U.S.C. § 216(b)

76. Plaintiffs adopt by reference all of the facts set forth above. *See* Fed. R. Civ. P. 10(c).

77. Other current and former HISD K-9 handlers were subject to the same policies. During the relevant period, at least four HISD handlers (Gil, Duron, Sloan, and Contreras) kept HISD canines at home and performed uncompensated off-duty care, and on information and belief other former handlers did as well, including handlers who were promoted, reassigned, or left HISD.

78. These employees are similarly situated to Gil because they were all subject to the same HISD policies: (a) the requirement that each handler house the assigned canine at home and care for it every day; (b) the Canine Manual's schedule, which credited dog care only on scheduled duty days; (c) the absence of any pay for care performed outside scheduled shifts on workdays, and of any pay before October 31, 2026 for care performed on weekends, holidays, and other days off; (d) the exclusion of the stipend from the regular rate; and (e) the absence of any system for recording off-duty care time. HISD's own written statements describe these policies as applying to all of its handlers.

79. HISD's unlawful policies and practices are generally applicable and do not depend on the personal circumstances of the members of the Overtime Collective. Liability can be determined on a collective basis from HISD's written policies, payroll records, and admissions; any differences among members go only to the amount of damages.

80. Since Gil's experiences are typical of the experiences of the members of the Overtime Collective (defined below), collective-action treatment is appropriate. *See* 29 U.S.C. § 216(b).

81. For these reasons and in accordance with 29 U.S.C. § 216(b), Plaintiffs request that the Court authorize notice regarding the pendency of this case and the right to join it to the following collective:

> All individuals employed by HISD as K-9 handlers at any time from three years prior to filing to the present who were assigned an HISD police canine to house at their residence (the "Overtime Collective").

82. The Overtime Collective is small and readily identifiable from HISD's records. Plaintiffs request that the Court order HISD to produce the names and last known contact information of its members.

83. HISD is liable to Plaintiffs and the members of the Overtime Collective for back wages equal to the difference between what HISD should have paid and what it actually paid, plus an equal amount as liquidated damages.

84. Gil has retained counsel experienced in wage and hour litigation, including collective actions. Gil and her counsel will prosecute this action vigorously on behalf of herself and the members of the Overtime Collective and have no interests that conflict with those of the Overtime Collective.

## IX. Count Five: Liquidated Damages, Attorney's Fees, and Costs Under 29 U.S.C. § 216(b)

85. Plaintiffs adopt by reference all of the facts set forth above. *See* Fed. R. Civ. P. 10(c).

86. Plaintiffs are entitled to liquidated damages in an amount equal to their unpaid overtime compensation. 29 U.S.C. § 216(b). HISD cannot show that it acted in good faith and with reasonable grounds for believing that its practices complied with the FLSA, 29 U.S.C. § 260, because its own Canine

Manual acknowledged that the FLSA required payment for dog care, its handlers repeatedly raised the issue, and it took no action for nearly two years.

87. Plaintiffs are authorized to recover attorney's fees and costs on their claims by statute. 29 U.S.C. § 216(b).

88. Plaintiffs have retained the professional services of the undersigned attorneys.

89. Plaintiffs have complied with all conditions precedent to recovering attorney's fees and costs.

90. Plaintiffs have incurred or may incur attorney's fees and costs in bringing this lawsuit.

91. The attorney's fees and costs incurred or that may be incurred by Plaintiffs were or are reasonable and necessary.

92. HISD is liable to Plaintiffs and the members of the Overtime Collective for liquidated damages, attorney's fees, and costs by reason of the FLSA violations described above. 29 U.S.C. § 216(b).

## X. Relief Sought

93. Plaintiffs demand the following relief:

a. an order under 29 U.S.C. § 216(b) authorizing notice regarding the pendency of this case and the right to join it to the Overtime Collective;

b. an order appointing Gil representative of the Overtime Collective;

c. an order appointing MOORE & ASSOCIATES counsel for the Overtime Collective;

d. an incentive award for Gil for serving as representative of the Overtime Collective if the Court allows this action to proceed as a collective action under 29 U.S.C. § 216(b);

e. judgment against HISD in favor of Plaintiffs and the members of the Overtime Collective for unpaid overtime compensation, including the overtime resulting from HISD's exclusion of the stipend from the regular rate, for the three years before the filing of each person's written consent;

f. liquidated damages in an amount equal to the unpaid overtime compensation;

g. reasonable attorney's fees and costs;

h. post-judgment interest under 28 U.S.C. § 1961; and

i. all other relief to which Plaintiffs and the members of the Overtime Collective may be entitled.

Respectfully Submitted,

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street | Suite 1110
Houston, Texas 77002-1055
Telephone: (713) 222-6775
Facsimile: (713) 222-6739

By: ______________________
Curt Hesse
State Bar No. 24065414
Federal Id. No. 968465
curt@mooreandassociates.net
Melissa Moore
State Bar No. 24013189
Federal Id. No. 25122
melissa@mooreandassociates.net

**ATTORNEYS FOR PLAINTIFFS**